WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Camila Davalos, et al.,<br>Plaintiffs,<br>v.<br>Reed Foutz Properties LLC, et al.,<br>Defendants. | No. CV-24-02298-PHX-SHD<br>**ORDER** |

Pending before me is Defendant Reed Foutz Properties, LLC's ("Foutz Properties") Application for Fees and Expenses. (Doc. 60 (the "Fee Application").) The Fee Application is fully briefed. (Docs. 63, 65.) For the reasons set forth below, the Fee Application will be **granted in part and denied in part**.

# I. BACKGROUND

## A. Parties and Claims

Plaintiffs are nineteen professional models who alleged that their images were misappropriated, altered, and used without authorization to advertise online for Furia Musical Nightclub & Sports Bar ("Furia"). (Doc. 27 at ¶¶ 5–6, 37–41, 110–24.) Defendants Jose Quintanilla and Patricia Quintanilla own and operate Furia, (*id.* at ¶ 7), and Foutz Properties rented out the property where Furia operates to the Quintanillas, landlord, (*id.* at ¶ 11; Doc. 51 at 2).

Plaintiffs filed this action on September 3, 2024. (Doc. 1.) After no defendant opposed Plaintiffs' motion for leave to amend, they filed their operative First Amended

Complaint ("FAC") on January 30, 2025, with the Court's leave.[1] (Docs. 25, 27.) Plaintiffs asserted nine claims against the Quintanillas and Foutz Properties based on the alleged misappropriation and use of the images. (Doc. 27 at ¶¶ 125–205.) As to Foutz Properties, the FAC alleged, on information and belief, that it knew of, approved of, or was involved in Furia's advertising practices, and that it benefitted commercially from them. (*Id.* at ¶¶ 11, 133.)

**B. Disposition of Plaintiffs' Claims**

On August 14, 2025, Foutz Properties moved for summary judgment on all nine claims, arguing that it "had no knowledge of, participation in, or control over the alleged misuse by the other Defendants (Furia's owners) of Plaintiffs' images on Furia's social media pages, and Plaintiffs never alleged that any such images were posted on the landlord's property," and thus Plaintiffs had stated no viable claim of landlord liability. (Doc. 41 at 2.) Foutz Properties further stated that, at Plaintiffs' request, it "demanded that Furia remove the images," (*id.* at 2; *see also id.* at 4 ¶ 13), and subsequently "obtained a signed statement from Mr. Quintanilla on December 31, 2024 confirming that he had removed all the images" (the "Quintanilla Letter"), (*id.* at 4 ¶ 14; *see also* Doc. 41 at 20 (attaching the Quintanilla Letter to the summary judgment motion as Ex. 1-B)).[2] After that date, it heard "nothing to the contrary from Plaintiffs or their counsel" indicating that any of the images remained online. (Doc. 41 at 4 ¶ 14.)

On September 26, 2025, Plaintiffs filed a notice (the "Notice") stating that they would not oppose summary judgment and would voluntarily dismiss all claims against all defendants. (Doc. 44 at 2.) Plaintiffs explained that in late 2024, they told Foutz Properties' counsel that they would dismiss their claims if the offending images were

---

[1] This case was reassigned to me shortly after Plaintiffs filed the FAC. (Doc. 31.)

[2] Foutz Properties also attached to its summary judgment motion Plaintiffs' July 7, 2025 response to requests for admission that included Plaintiffs' admissions that Foutz Properties had demanded that Furia stop using the images on October 17, 2024 and obtained the Quintanilla Letter. (Doc. 41 at 27 (attaching responses to requests for admission as Ex. 2).)

removed by December 30, 2024. (*Id.* at 2–3.) They further stated that because the images were not removed by December 30, 2024, they moved to amend their complaint on January 2, 2025 to add the Quintanillas. (*Id.* at 3.) Plaintiffs' counsel acknowledged the Quintanilla Letter, but claimed that Plaintiffs had never received it and did not learn that the images had been removed until after the filing of the summary judgment motion:

> Plaintiffs' counsel has no recollection of ever receiving such letter; and a review of all e-mail correspondence between the parties confirms that Plaintiffs were never e-mailed this December 28th letter. If Plaintiffs had been provided a copy of this letter, they would have as a matter of course checked the Furia social media pages to confirm that the images were in fact removed (as they had earlier in December) and, if confirmed, would have dismissed this lawsuit, as they represented they would.
>
> In connection with Plaintiffs' preparation of their response to Reed Foutz's summary judgment motion, Plaintiffs learned that the images have been removed from Furia's social media pages. When that removal occurred, Plaintiffs do not know. As such, and as represented in December 2024, Plaintiffs are prepared to dismiss this lawsuit, both as to Reed Foutz and the Quintanillas.[3]

(Doc. 44 at 3.)

At a hearing held on December 15, 2025 (the "Hearing"), I construed the Notice as Plaintiffs' nonopposition to Foutz Properties' summary judgment motion and granted that motion as unopposed under LRCiv 7.2(i). (Doc. 59 at 4:2–8.) Plaintiffs then orally moved to dismiss their claims against the Quintanillas, and Jose Quintanilla, who was present at the Hearing, consented to dismissal. (*Id.* at 4:9–5:17, 8:6–19.) I entered an order the same day confirming the resolution of Plaintiffs' claims. (Doc. 57 at 1 (the "Sanctions Order").)

### C. Sanctions Briefing

#### 1. Foutz Properties' Sanctions Motion

On October 21, 2025, after Plaintiffs filed the Notice, Foutz Properties moved for sanctions against Plaintiffs' counsel John Golaszewski and The Casas Law Firm, P.C.,

---

[3] Although Plaintiffs' Notice describes the Quintanilla Letter as a "December 28" letter, it had two dates on it: December 28, 2024 at the top, and a signature date of "12-31-2024" accompanying Jose Quintanilla's signature. (Doc. 41 at 20.)

under 28 U.S.C. § 1927 (the "Sanctions Motion"), arguing that all activity in the case from and after the January 30, 2025 filing of the FAC resulted from unreasonable and vexatious multiplication of the litigation.[4] (Doc. 47 at 1–2.) Foutz Properties asserted that it provided the Quintanilla Letter to Golaszewski multiple times, including on January 2, 2025, with Foutz Properties' initial disclosure statement, (*see* Doc. 47 at 2 (citing ¶¶ 9–10 of Ex. A thereto)) and also as an exhibit to Foutz Properties' February 13, 2025 answer to the FAC, (*see id.* at 2; *see also* Doc. 32 (referencing the Quintanilla Letter multiple times)); Doc. 32-2 (reflecting Quintanilla Letter as Ex. B to the answer)). Based on these facts, Foutz Properties argued that it was entitled to a sanctions award because, by Golaszewski's own account as set forth in the Notice, the case should have been dismissed in early January 2025. (*Id.* at 2–3.) Furthermore, it argued that the FAC—filed on January 30, 2025, weeks after Foutz Properties had first sent Plaintiffs the Quintanilla Letter—included false allegations that the images were still online as of that date. (*Id.* at 3.)

Golaszewski responded by arguing that sanctions were unavailable under § 1927 because he did not engage in unnecessary filings and tactics, and also because he did not act recklessly or in bad faith. (Doc. 50 at 2–4.) He also argued that the FAC stated a viable contributory trademark infringement claim, and that he filed it at Foutz Properties' suggestion to add the Quintanillas. (*Id.* at 4.) Furthermore, Golaszewski continued to profess ignorance about the Quintanilla Letter, stating that he never saw Foutz Properties' January 2, 2025 disclosure statement that included the letter, and argued that because his offer to dismiss the case had lapsed by December 30, 2024, whether or when he received the letter was irrelevant. (*Id.* at 5–7.) Finally, he attached an email he sent Foutz Properties' counsel on December 19, 2024, which provides context concerning the contentious relationship between counsel. (Doc. 50-1 at 2–3.) In that email, he expressed that his client was interested in dismissing the case if the images were taken down, but also

---

[4] Because law firms may not be sanctioned under 28 U.S.C. § 1927, *Kaass Law v. Wells*, 799 F.3d 1290, 1295 (9th Cir. 2015), I refer only to Golaszewski when discussing counsel's conduct in this case. Additionally, I amend my Sanctions Order to impose sanctions against Golaszewski only, as described in section II(A) below.

stated that he was unfazed by the prospect of sanctions being sought against him for pursuing claims against Foutz Properties and suggested that Foutz Properties might also be subject to sanctions. (Doc. 50-1 at 2 ("I cannot tell you how little I am concerned about your sanctions threat . . ..").)

In reply, Foutz Properties asserted that its counsel received the Quintanilla Letter by email on December 31, 2024, the day it was signed, and mailed it to Golaszewski along with its initial disclosures. (*See* Doc. 51 at 2 (citing Doc. 51-1 at 2–3 ¶¶ 9–12); *see also* Doc. 51-1 at 6–9 (initial disclosures served on January 2, 2025 describing the Quintanilla Letter and its contents).) It further asserted that, in addition to the other instances where it had provided the letter to Plaintiffs, it had also emailed the letter to Golaszewski on April 28, 2025, in conjunction with its discovery requests. (Doc. 51 at 3).) Foutz Properties emphasized that Plaintiffs' own July 2025 discovery responses acknowledged the Quintanilla Letter's contents and authenticity. (Doc. 51 at 2–3 (citing Doc. 51-1 at 24–132 (Plaintiffs' discovery responses)).)

**2. Plaintiffs' Cross-Motion for Sanctions**

Plaintiffs cross-moved for sanctions (the "Cross-Motion") in their response to the Sanctions Motion. (Doc. 50 at 8–9.) Plaintiffs sought sanctions against Foutz Properties its attorneys under Federal Rule of Civil Procedure 11, § 1927, and the district court's inherent powers, based on their contention that the Sanctions Motion was frivolous because it rested, without supporting authority, on a theory that counsel could be sanctioned for not keeping open a settlement offer that lapsed on December 30, 2024. (*Id.*) Plaintiffs further contended that Foutz Properties had not disclosed when it received the Quintanilla Letter and requested limited discovery on the handling of that letter, including whether it "in fact received [the letter] on December 28th." (*Id.* at 6–7 & n.1.)

Foutz Properties responded by making clear that the Sanctions Motion did not seek to enforce any settlement offer, but rather sought sanctions based on Golaszewski's failure to terminate the case after being provided the Quintanilla Letter:

> [T]he gravamen of the Motion for Sanctions was that Plaintiffs' counsel has

> now acknowledged that he intended to dismiss the Complaint whenever he received confirmation that the images were removed—even as late as September 26, 2025, when he filed the Notice—but he failed to pay even the slightest attention to the multiple documents mailed to and e-served upon him over the course of the first five months of the year that not only included but featured prominently Quintanilla's written confirmation of removal of the images.

(Doc. 51 at 4.)

In their reply supporting their Cross-Motion, Plaintiffs asserted that Foutz Properties had backdated the Quintanilla Letter, and again requested discovery on that issue. (Doc. 52 at 3 & n.2.) They also explained that the FAC's allegations that the images remained posted were carried over from the proposed amended complaint attached to their January 2, 2025 motion for leave to amend, and further asserted that, notwithstanding the multiple times Foutz Properties provided them the Quintanilla Letter, Foutz Properties had never confirmed that the images had been removed. (*Id.* at 4–5.)

**D. The Hearing and Sanctions Order**

At the Hearing, I heard argument on the Sanctions Motion and the Cross-Motion after resolving the summary judgment motion and dismissing the Quintanillas. (Doc. 59 at 3:22–4:1, 6:1–8, 24:1–6.) I offered the parties the opportunity to introduce additional evidence, (*id.* at 3:17–21), but neither party adduced any testimony. Nonetheless, a few additional pieces of information were supplied at the Hearing. Foutz Properties clarified that it was only seeking sanctions against John Golaszewksi and his firm, and not against Plaintiffs' local Arizona counsel. (*Id.* at 10:17–11:4.) It also clarified that it had suggested to Plaintiffs that they amend their complaint to add the Quintanillas as defendants and remove Foutz Properties, not to maintain Foutz Properties in the case. (*Id.* at 11:22–12:6.)

Golaszewski also provided additional information during his argument. He confirmed that between December 18, 2024, and the filing of the summary judgment motion almost eight months later on August 14, 2025, he did not check Furia's social media websites to see if the images were still posted. (*Id.* at 16:9–19.) He also stated that Plaintiffs "didn't take any" discovery to establish their claims against Foutz Properties.

(*Id.* at 17:4–18.) And after confirming that he would have checked Furia's social media page if he had received the Quintanilla Letter sooner—and then would have dismissed the case—he asserted that he personally never saw the letter until after Foutz Properties filed its summary judgment motion. (*Id.* at 17:22–18:25.)

I then asked Golaszewski about Plaintiffs' July 7, 2025 and July 9, 2025 discovery responses. (*Id.* at 19:1–15.) Those responses admitted the contents and authenticity of the Quintanilla Letter, (*see, e.g.*, Doc. 51-1 at 26 (admitting that Jose Quintanilla signed the Quintanilla Letter); *id.* at 33–34 (not contesting authenticity of Quintanilla Letter)), and bore Golaszewski's signature, (*id.* at 27, 33, 43, 48, 53, 58, 63, 68, 73, 78, 83, 88, 93, 98, 103, 108, 113, 118, 123 ("*/s/ John V. Golaszewski*")). Golaszewski, however, claimed to be unaware of those discovery responses: "I'm not sure what Your Honor is referring to by July 7 and July 9 where anybody acknowledged any receipt or notice of that Quintanilla letter." (Doc. 59 at 19:19–21.) I then Golaszewski whether he had reviewed Foutz Properties' filings associated with the Sanctions Motion, since the July 2025 discovery responses were attached as exhibits to Foutz Properties' reply in support of the Sanctions Motion, and Golaszewski claimed that he had. At that point, Foutz Properties' counsel had to educate Golaszewski about his own discovery responses. (*Id.* at 19:22–20:9.) Golaszewski, nonetheless, still could not identify the discovery responses whilst looking through the materials at counsel's table, so I invited his local co-counsel to show him "what he should have already been . . . prepared to discuss," paused the proceedings so he could find the pertinent documents, and then, when he still could not find them, identified them for him. (*Id.* at 20:10–21:7.)

After additional discussion, Golaszewski maintained that he first learned of the Quintanilla Letter in September 2025 and suggested that there may have been an "oversight" with him "not having looked at [the July 2025] responses to discovery prior to them being served." (*Id.* at 21:8–22:3.) He further argued that he had not engaged in recklessness or bad faith. (*Id.* at 22:4–14.)

At the conclusion of the Hearing, I denied the Cross-Motion from the bench because

Plaintiffs had "identified no frivolous or bad faith conduct by the defendant Reed Foutz in this case." (*Id.* at 24:7–12.) In making that ruling, I rejected Plaintiffs' assertions that the Quintanilla Letter was backdated and that Foutz Properties had attempted to mislead me about its date, given that the letter bears the date December 28 at the top and December 31 on its signature line. (*Id.* at 24:13–19 (explaining that "the letter itself clearly states it was signed on December 31st, 2024, and there's no indication anywhere in any of the papers that the defendant [Foutz Properties] intended to mislead the Court in any way"); *see also id* at 7:5–8 ("I found absolutely no intent to deceive" by Foutz Properties' counsel or paralegal).) Indeed, when Golaszewski suggested that Foutz Properties had tried to engage in deception by, at times, referring to the letter by its December 28, 2024 heading, I rejected that argument. (*Id.* at 14:23–15:2.)[5]

I also granted the Sanctions Motion and imposed sanctions against Plaintiffs' counsel John Golaszewski and his law firm, The Casas Law Firm, P.C., based on 28 U.S.C. § 1927, Rule 11, and my inherent authority. (Doc. 59 at 24:20–28:11; *see* Doc. 57.) I explained that the evidence "established that [Foutz Properties] obtained the Quintanilla December 31st, 2024 letter indicating that the allegedly infringing images had been

---

[5] I did not directly address Plaintiffs' request for discovery surrounding the Quintanilla Letter because no discovery was warranted. The letter lists December 28, 2024 at the top, but also clearly states that it was signed on December 31, 2024. (Doc. 41 at 27.) Two days after it was signed, on January 2, 2025, Foutz Properties disclosed the letter with its initial disclosures, describing the letter as a "December 31, 2024 Letter from Jose Quintanilla. (RE000004)." (Doc. 51-1 at 8.) When Foutz Properties answered the FAC, it referred to the letter as a "December 28, 2024" letter, (Doc. 32 at 4, 5), but attached a copy clearly showing that it was signed on December 31, 2024, (Doc. 32-2). When Foutz Properties propounded its discovery requests on Plaintiffs on April 10, 2025, the pertinent requests for admission stated that the letter was signed "on December 31, 2024." (Doc. 51-1 at 16.) When Plaintiffs responded to the requests for admission on July 7, 2025, they conceded the contents of the "December 31, 2024" letter. (Doc. 51-1 at 26.) And when Foutz Properties moved for summary judgment, it described the letter as a "signed statement from Mr. Quintanilla on December 31, 2024," (Doc. 41 at 4), and attached the letter showing that it was signed on December 31, 2024, (Doc. 41 at 20). Simply put, there was nothing to discover about the date discrepancy on the document, given that Foutz Properties repeatedly acknowledged that it was signed on December 31, 2024.

removed on December 31st, 2024, and that [Foutz Properties], through its counsel, provided that letter to Plaintiffs via discovery served on January 2nd, 2025, well before the actual filing of the first amended complaint on January 30th, 2025." (*Id.* at 25:13–19.) I further found that: (1) Plaintiffs presented no evidence that they did not receive the Quintanilla Letter with the January 2, 2025 disclosures, (*id.* at 25:19–22); (2) there was no dispute that the letter was provided to Plaintiffs on February 13, 2025, when it was attached as an exhibit to Foutz Properties' answer, yet Plaintiffs did not verify whether the images were still posted, (*id.* at 25:23–26:3); (3) Plaintiffs received the Quintanilla Letter multiple times, including in January, February, and April of 2025, (*id.* at 26:4–10); (4) Plaintiffs twice admitted reviewing the Quintanilla Letter in July 2025, (*id.*); and (5) Golaszewski stated at the Hearing that Plaintiffs engaged in no discovery to establish liability against Foutz Properties, (*id.* at 26:11–14).

Based on the record before me, I imposed sanctions due to Golaszewski's bad faith conduct:

> I find that the filing of the first amended complaint as against Reed Foutz and the continued litigation of the claims against Reed Foutz after that point was frivolous and made in bad faith or at the very least reckless, and it caused a multiplication of the proceedings, specifically forcing Defendants to engage in discovery which was one-sided since the plaintiffs did not engage in discovery to prove its claims against Reed Foutz, and Defendants were forced to unnecessarily brief a motion for summary judgment, which, upon reviewing, Plaintiffs waved the white flag.

(*Id.* at 25:2–12; *see also id.* at 27:13–19 (finding it "troubling" that by the time the Quintanilla Letter was obtained, Foutz Properties had already worked with Plaintiffs to develop a letter demanding that the Quintanillas remove the images and had sent that letter, and "[a]t that point I just don't understand why this case continued").

During the Hearing, I rejected two of Golaszewski's arguments for why he should not be sanctioned. First, he argued that Plaintiffs' settlement offer expired on December 30, 2024, rendering his later receipt of the Quintanilla Letter irrelevant. I found, however, that Plaintiffs' conduct—and indeed his unequivocal statement in the Notice—established

the opposite: that Plaintiffs always intended to dismiss the action once they learned the images had been taken down, which is in fact what Plaintiffs did. (*Id.* at 26:14–22; *see id.* at 17:22–18:7.) Second, Golaszewski argued that he should not be sanctioned because his only filing in this case was the FAC. I rejected that argument and found that Golaszewski's lack of further action in the case cut the other way: after filing the FAC, he stated that he took no further discovery or action on the claims against Foutz Properties, which required Foutz Properties to conduct discovery and move for summary judgment, and only then did he check to see if the images had been taken down and announce that he intended to dismiss those claims. (*Id.* at 27:24–28:8; *see id.* at 16:9–19.)[6]

On December 15, 2025, I entered the Sanctions Order, which summarized my rulings made at the Hearing earlier that day and set a briefing schedule for Foutz Properties' application for fees and expenses. (Doc. 57.)

### E. The Fee Application

On January 9, 2026, Foutz Properties filed the Fee Application in which it seeks $54,784.60 in attorneys' fees and expenses incurred from and after January 30, 2025. (Doc. 60 at 1–2.) The Fee Application is supported by a declaration of its counsel at Hunter, Humphrey & Yavitz, PLC ("HHY") and time entries for work performed, and expenses incurred, from January 31, 2025, through January 2, 2026, totaling $54,017.00 in fees and $767.60 in expenses. (*Id.* at 2; *see also* Doc. 60-1 at 3–15 (time entries).)

Golaszewski responded on January 30, 2026, arguing briefly that sanctions were unwarranted, and that HHY's fees were unreasonable and should be reduced by $17,641.43, in addition to an across-the-board reduction. (*See generally* Doc. 63.) He also asked me to reconsider my decision not to sanction Foutz Properties' counsel—effectively

---

[6] Golaszewski stated that in July 2025 he was attacked and stabbed, resulting in his hospitalization, and explained that nothing "went on in this case" from July until September. (*Id.* at 17:6–11.) His statement, however, provides no explanation for his failure to check on the status of the images after he was notified before July 2025 that they had been removed. I also note that Golaszewski did not reference the stabbing in his briefing on the Sanctions Motion to justify his conduct.

seeking reconsideration of the denial of the Cross-Motion—and to permit limited discovery into the relationship between HHY, Foutz Properties, and the Quintanillas. (*Id.* at 10–15.) Foutz Properties replied on February 5, 2026. (Doc. 65.)

## II. SANCTIONS

Before I address the Fee Application, I will address the Sanctions Order. In Plaintiffs' opposition to the Fee Application, they seek reconsideration of a portion of the Sanctions Order—the denial of their Cross-Motion—and suggest that they intend to appeal my sanctions findings. (*See* Doc. 63 at 10–15 (arguing for reconsideration of the denial of the Cross-Motion); *id.* at 2 ("expressly reserv[ing] all rights to seek appellate review" of the sanctions findings).) For the benefit of any appellate court, I will clarify my reasons for imposing sanctions. Additionally, although not raised by Golaszewski, I will sua sponte reconsider—and narrow—the scope and bases for my finding that sanctions are warranted. Finally, I will address Plaintiffs' reconsideration request and associated request for discovery.

### A. Sanctions Under 28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney . . . in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Ninth Circuit has explained that it reaches only "unnecessary filings and tactics" after a lawsuit has begun, not initial pleadings, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996), and only authorizes the recovery of excess costs arising from the attorney's unreasonable and vexatious conduct, *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir. 1983). "Courts wishing to impose sanctions under § 1927 must make a finding that the attorney to be sanctioned acted with 'subjective bad faith.'" *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024) (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).

Applying these standards to this case, I find that Golaszewski prolonged this case

in bad faith, via the unnecessary filing of the FAC and his tactics. Golaszewski conceded—both in the Notice and at the Hearing—that he always intended to dismiss the case if Furia took down the images. (Doc. 44 at 2–3; Doc. 59 at 17:22–18:25.) But when Foutz Properties sent him the Quintanilla Letter on January 2, 2025, he did not check to see if the images had been taken down, nor did he dismiss the case. Instead, several weeks later, on January 30, 2025, he filed the FAC, where he represented that the images were still published online. (*See generally* Doc. 27.) He then received the Quintanilla Letter again on February 13, 2025, when Foutz Properties answered the FAC. (Doc. 32-2.) But he neither checked to see if the images were still posted online, nor dismissed the case. He also took no action when he received the Quintanilla Letter for a third time on April 28, 2025, in conjunction with Foutz Properties' discovery requests. (Doc. 51-1 at 15–23.) He then signed discovery responses on July 7 and 9, 2025, conceding the contents and authenticity of the Quintanilla Letter, (Doc 51-1 at 25–124), but still took no action.[7]

Golaszewski's conduct demonstrates that his approach to this case was to do the minimum to move it forward while forcing Foutz Properties to unnecessarily defend itself. And he took that approach after he had a contentious exchange with Foutz Properties' counsel in which he expressed disdain and contempt towards both Foutz Properties and its counsel. (Doc. 50-1 at 2.) He reacted unfavorably to their threat of sanctions, indicating that they might be subject to sanctions (a precursor to the Cross-Motion). (*Id.*) He suggested that Foutz Properties was incompetent for not being able to help its tenant, Furia, take down the images from Furia's social media websites. (*Id.* ("Where's the disconnect? This is a 20 minute ask . . ..").) This context provides a lens through which I construe Golaszewski's subsequent conduct.

I find that Golaszewski's conduct does not reflect mere negligence, or even gross

---

[7] At the Hearing, Golaszewski confirmed that he "certainly know[s] what [his] firm does," (Doc. 59 at 21:18–19), but also suggested (equivocally) that there may have been an "oversight" and that he "perhaps" signed the discovery responses without reading them, (*id.* at 21:8–22:3).

negligence. He set the terms upon which the case would be dismissed, but then never took any action when he was informed that those terms had been met. His filing of the FAC, after being given the Quintanilla Letter, reflects an "unnecessary filing" that prolonged this litigation. *In re Keegan*, 78 F.3d at 435. Furthermore, his continuation of the litigation after being given the Quintanilla Letter several additional times reflects bad faith tactics that prolonged this case and forced Foutz Properties to incur fees in conducting discovery and moving for summary judgment, after which Golaszewski abruptly agreed to dismiss the case.

Put another way, after his unpleasant exchange with Foutz Properties' counsel on December 19, 2024, Golaszewski moved forward with this case—and let Foutz Properties incur fees defending this case—even though the circumstances were such that he did not actually intend to pursue his clients' claims against Foutz Properties. It is beyond coincidence, or innocent explanation, that he filed the FAC and then declined to dismiss, despite being given the Quintanilla Letter multiple times. I do not credit Golaszewski's assertions that he did not learn about the Quintanilla Letter until September 2025, when he reviewed the summary judgment motion. This is because he has made demonstrably false statements about his receipt of the Quintanilla Letter at least twice in this case.

First, in the Notice, he stated that "a review of all e-mail correspondence between the parties confirms that Plaintiffs were never e-mailed this December 28th letter." (Doc. 44 at 3.) But as already explained above, Foutz Properties emailed both Golaszewski and another member of his firm the Quintanilla Letter on April 28, 2025, in connection with Foutz Properties' discovery requests. (Doc. 51-1 at 12–14 (April 28, 2025 email send to "John Golaszewski" and another individual at The Casas Law Firm); *id.* at 15–23 (email attachment containing discovery requests and Quintanilla Letter).) Second, as discussed in more detail in Section II(D) below, Golaszewski most recently suggested that Foutz Properties first filed the Quintanilla letter when it filed its reply in support of its Sanctions Motion in November 2025. (*See* Doc. 63 at 15 n.3.) The docket in this case confirms that this suggestion is false.

Simply put, Golaszewski's statements about when he received the Quintanilla Letter or when he actually learned of that letter are not worthy of belief, and I do not believe them. The record indicates that Golaszewski is willing to state as fact whatever he thinks will help him most in a given situation, even if an assertion is demonstrably false. I find that he engaged in subjective bad faith conduct.

Nonetheless, I reconsider the portion of the Sanctions Order imposing sanctions under § 1927 against The Casas Law Firm, P.C., because a law firm may not be sanctioned under § 1927. *Kaass Law*, 799 F.3d at 1295.

**B. Sanctions Under Rule 11 and Inherent Authority**

Although I confirm that sanctions are warranted against Golaszewski under § 1927, I will, sua sponte, reconsider the imposition of sanctions based on Rule 11 and my inherent authority, as well as sanctions based on Plaintiffs' filing of contributory trademark infringement claims against Foutz Properties. Foutz Properties did not seek sanctions under Rule 11 or my inherent authority, nor did it seek sanctions based on the nature of Plaintiffs' contributory trademark infringement claims against it. (*See generally* Doc. 47.) I nonetheless imposed sanctions under Rule 11 and my inherent authority, (*see* Doc. at 57 at 1; Doc. 59 at 24:25–25:2), and did so based, in part, on my finding that Plaintiffs' claims were frivolous, (Doc. 59 at 26:23–27:12 (discussing limitations on contributory trademark infringement).)

A court may, on its own initiative, impose sanctions against an attorney under Rule 11(b). Fed. R. Civ. P. 11(c)(3). But if a court is inclined to do so, it must allow the attorney to show cause why "conduct specifically described in the order has not violated Rule 11(b)." *Id.* Likewise, although a court may impose sanctions based on its inherent authority, "notice and an opportunity to be heard are indispensable prerequisites for the types of sanctions imposed by the district court." *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1109–10 (9th Cir. 2005) (citing *Cole v. United States Dist. Ct.*, 366 F.3d 812 (9th Cir. 2004)).

In setting the Hearing, I did not describe any specific conduct as potentially

violating Rule 11(b), nor did I mention that rule or my inherent authority as potential bases for imposing sanctions against Golaszewski. (Doc. 53.) Thus, Golaszewski was never given notice that he could be sanctioned under Rule 11 or my inherent authority. Accordingly, I will modify the Sanctions Order to reflect that I am imposing sanctions solely based on 28 U.S.C. § 1927 and solely based on Golaszewski's conduct in multiplying this case, rather than the merits (or lack thereof) of Plainitffs' contributory trademark infringement claims.

**C. Reconsideration Request**

I now turn to Plaintiffs' request for reconsideration of the denial of their Cross-Motion. Under the local rules in the District of Arizona, a reconsideration motion must "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." LRCiv 7.2(g)(1). Absent good cause, such motions must be filed within fourteen days after the entry of the order being challenged. LRCiv 7.2(g)(2).

Plaintiffs acknowledge that they sought reconsideration outside the fourteen-day period set forth in our local rules, but argue that I should nonetheless consider their request based on new evidence they received in connection with the Fee Application—namely, time entries that show that HHY worked with the Quintanillas. (Doc. 63 at 10.) Those entries reflect that, among other things, HHY checked with Foutz Properties' principal about the necessity of Jose Quintanilla answering (3/10/2025 entry), assisted the Quintanillas in preparing a draft answer and evaluated their defenses (3/11/2025 and 3/12/2025 entries), urged them to obtain counsel (3/20/2025 entry), shared information with them about case deadlines (3/25/2025 entry), and otherwise communicated with them (multiple entries). (*See* Doc. 60-1 at 3–4.) The entries, however, have no bearing on the issues presented in the Cross-Motion, which were whether the Sanctions Motion was frivolous and whether Foutz Properties or HHY backdated the Quintanilla Letter. (*See*

Doc. 50 at 6–7 n.1, 8–9; Doc. 52 at 3 & n.2.) Accordingly, I do not find good cause to entertain the late-filed reconsideration request.[8]

Furthermore, even if I were to entertain the reconsideration request on the merits, I would deny it because it is premised on the notion that Foutz Properties engaged in sanctionable conduct by suggesting that Golaszewski had lied when he filed the FAC stating that the images were still posted. (Doc. 63 at 10–15.) There was nothing improper about that suggestion, however, given the facts of this case. It was reasonable for Foutz Properties to infer from the Quintanilla Letter that the images had been taken down by December 31, 2024, that Golaszewski knew that they had been taken down, and that he nonetheless filed the FAC in which he alleged that the images were still posted.[9]

**D. Request for Discovery**

I reject Plaintiffs' request for discovery into the Quintanilla Letter and HHY's relationship with the Quintanillas. No discovery is warranted. First, there is no basis for discovery into HHY's relationship with the Quintanillas, as any such relationship is irrelevant to Plaintiffs' bases for seeking sanctions against Foutz Properties or HHY. Plaintiffs' arguments to the contrary are unavailing.

Second, with respect to the Quintanilla Letter, I already explained in footnote 5 that there was absolutely nothing to discover because Foutz Properties had repeatedly characterized the letter as a "December 31, 2024" letter, had repeatedly provided Plaintiffs that letter, and had repeatedly filed on the docket a copy of that letter showing that it was signed on December 31, 2024. Thus, there is no substance to Plaintiffs' argument that

---

[8] I separately address whether Foutz Properties is entitled to recover fees and expenses associated with HHY's time spent assisting the Quintanillas in Section III(C)(4) below.

[9] At the Hearing, I expressly declined to find that Golaszewski made misrepresentations in the FAC because I had no evidence, other than the unsworn Quintanilla Letter, addressing whether the images remained online or had been removed when the FAC was filed. (Doc. 59 at 30:14–31:6.) Although I did not rely on any inaccuracy of the allegations in the FAC to impose sanctions, that does not mean that Foutz Properties' allegations were frivolous, made in bad faith, or sanctionable.

Foutz Properties had backdated the letter or otherwise attempted to mislead anyone about the creation and execution of that letter.

Rather than simply accept that there is no evidence of backdating or that Foutz Properties attempted to mislead anyone about the timing of the Quintanilla Letter, Plaintiffs double down on their argument:

> The Court denied [the request for discovery into the genesis of the Quintanilla Letter] and noted that "[t]he document says December 28th at the top. The signature line clearly says December 31st." Tr. at 7. But HHY did not attach the Quintanilla letter to the sanctions motion; they only submitted it on *reply*, see ECF No. 51-1, after their tactic of repeatedly referring to it as the "December 28th letter" had been called out in Plaintiffs' cross-motion and after Plaintiffs had requested discovery into their and Reed Foutz's handling of that letter.

(Doc. 63 at 15 & n.3 (emphasis in original).)

Plaintiffs' assertions that Foutz Properties and HHY (a) engaged in misconduct by referring to the Quintanilla Letter as a December 28 letter, and (b) withheld the Quintanilla Letter until filing their reply in support of their Sanctions Motion, (Doc. 51), are frivolous. First, as the record makes abundantly clear, Foutz Properties repeatedly referred to the letter as a December 31 letter, and although it also referred to the letter as a December 28 letter, it did not intend to mislead anyone given that it repeatedly attached copies of the letter showing that it was signed on December 31. (*See supra* note 5.)

Second, Plaintiffs' suggestion that Foutz Properties and HHY waited until the reply in support of the Sanctions Motion to file the Quintanilla Letter is belied by the record. In addition to providing Plaintiffs the letter via disclosures and discovery, Foutz Properties filed the letter on the public docket *twice* before it filed its reply in support of its Sanctions Motion: on February 13, 2025, (Doc. 32-2 (exhibit to answer)), and on August 14, 2025, (Doc. 41 at 20 (exhibit to summary judgment motion)). Indeed, Golaszewski *admitted that he knew of the letter no later than September 2025 when he was evaluating the summary judgment motion*, (Doc. 44 at 2–3; Doc. 59 at 18:23–25, 21:8–14, 21:20–22), long before Foutz Properties filed its reply, (Doc. 51 (filed November 12, 2025)). Accordingly,

Plaintiffs' suggestion that Foutz Properties and HHY were hiding the letter until they filed their reply is frivolous.

## III. FEE APPLICATION

Golaszewski objects to the substance of the Fee Application on several grounds.[10] I address each ground in turn.

### A. Legal Standard

District courts may use the "traditional lodestar" method to calculate fees reasonably incurred as a result of a violation of § 1927. *See Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (evaluating district court's calculation of fees awarded under § 1927). Under that method, district courts must first calculate the lodestar figure by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Caputo*, 96 F.4th at 1151 ("In calculating fee awards, judges are instructed to scrutinize the 'reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.'" (quoting *Long v. I.R.S.*, 932 F.2d 1309, 1314 (9th Cir. 1991))).

A reasonable hourly rate is the "prevailing market rate in the relevant community." *Kelly*, 822 F.3d at 1099 (cleaned up); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986) (explaining that in assessing hourly rates, courts consider the "experience, skill, and reputation of the attorney requesting fees" and are "guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation") *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). As for whether hours were reasonably expended, the Supreme Court has made clear that a "but-for test" applies under which a party seeking fees "may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (quoting *Fox v. Vice*,

---

[10] Although the response to the Fee Application is couched as Plaintiffs' response, (Doc. 63 at 1), Plaintiffs are not subject to, or liable for, any sanctions award, which runs solely against Golaszewski. Accordingly, I characterize all arguments opposing fees as Golaszewski's arguments, for simplicity.

563 U.S. 826, 836 (2011)). Moreover, courts must exclude hours that are "excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), and fees should not be awarded for purely clerical or administrative tasks that could and should be performed by support staff, *see Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (explaining that purely clerical tasks, such as filing and document organization, should be "subsumed in firm overhead").

**B. Reasonableness of HHY's Rates**

Golaszewski generally challenges HHY's rates based on the lack of germane information supplied in the Fee Application concerning their reasonableness. (Doc. 63 at 3–4.) While the Fee Application is bare, Foutz Properties cured this deficiency by supplying a supplemental declaration with its reply to the Fee Application. (*See* Doc. 65 at 2–3 (explaining failure to provide the requisite information with the Fee Application due to inapplicability of LRCiv 54.2 to fees recovered as sanctions); *id.* at 9–12 (Supplemental Declaration of Candess J. Hunter setting forth rates for, and experience, skill, and reputation of, timekeepers Candess Hunter, Randall Yavitz, Isabel Humphrey, and Stacey Mosbrucker).) Moreover, Foutz Properties noted that Golaszewski successfully obtained a fee award at a rate of $600 per hour for his time in another case decided in this district. (*Id.* at 3 n.1 (citing *Hinton v. Completely Innocent LLC*, 2022 WL 1265924, at *5 (D. Ariz. Apr. 28, 2022)).) Based on the information supplied, I find that HHY's attorney rates ($460 for Yavitz, $450 for Hunter, and $430 for Humphrey) are reasonable and consistent with the prevailing rates in the market, especially in light of HHY's counsel's skill and experience.

Additionally, I reject Golaszewski's argument that paralegal Stacey Mosbrucker's $210 per hour rate is unreasonable. Golaszewski argues that paralegal rates in this market range from $70 to $125 per hour. (Doc. 63 at 5 (citing cases in this district from 2007 through 2022).). But courts in this district routinely find paralegal rates exceeding $210 per hour reasonable. *See, e.g.*, *Acella Pharms. LLC v. ANI Pharms. Inc.*, 2026 WL 937964, at *3 (D. Ariz. Apr. 7, 2026) (approving $280 per hour paralegal rate); *Gonzalez v US*

*Human Rights Network*, 2024 WL 149979, at *18–20 (D. Ariz. Jan. 12, 2024) (noting that this district recently has "approved hourly rates of . . . $265 for paralegals"), *aff'd in part, rev'd in part on other grounds*, 2026 WL 382043 (9th Cir. Feb. 11, 2026); *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 2020 WL 1694739, at *8 (D. Ariz. Apr. 7, 2020) (finding $355 for a senior paralegal reasonable). Moreover, Mosbrucker has been working as a paralegal with HHY lawyer Randall Yavitz for over 39 years. (Doc. 65 at 4.) I find that Mosbrucker's experience and skill justify a rate of $210 per hour, which is consistent with the prevailing rate in the market.

**C. Reasonableness of Time Spent**

In addition to challenging the reasonableness of HHY's rates, Golaszewski challenges the reasonableness of the time expended by HHY. Among other things, he challenges $17,641.43 in fees as duplicative, redundant, excessive, or otherwise unreasonable, based on the analysis of Joseph N. Casas, the Managing Partner of Golaszewski's law firm. (Doc. 63 at 4–5; Doc. 63-1 at ¶¶ 6–16; Doc. 63-2 at 2–10 (spreadsheet identifying time entries challenged and associated bases); Doc. 63-3 (color-coded challenges).) I address his various arguments below.

**1. Supporting Evidence**

Golaszewski first generally argues that HHY failed to supply evidence that the time it expended after the January 30, 2025 filing of the FAC was reasonable. (Doc. 63 at 4.) I reject this argument because HHY supplied its time records reflecting how it incurred the fees and expenses it now seeks. (Doc. 60-1 at 3–15.)

**2. Duplication**

With respect to duplication of work, Golaszewski argues that multiple entries reflect multiple timekeepers performing the same or closely related tasks, giving as examples the work by three timekeepers to prepare and review Foutz Properties' answer to the FAC and three lawyers attending the Hearing. (Doc. 63 at 5–6.) He also challenges what he characterizes as "an extraordinary volume of internal conferences," giving as examples multiple conferences over two months concerning discovery and discovery strategy and

multiple conferences concerning preparation of the summary judgment motion. (*Id.* at 6–7.)

I reject Golaszewski's arguments. There is nothing inherently inappropriate about multiple layers of drafting and review, especially where the participation of multiple timekeepers likely reduced the fees incurred. For example, I reject Golaszewski's argument that after Mosbrucker spent 3.4 hours preparing a draft answer to the FAC, it was improper for Yavitz to spend 1.9 hours further drafting it, and for Hunter to spend .9 hours reviewing and editing it. It is reasonable for a lawyer to refine and expand upon a draft prepared by a paralegal, and for another lawyer to then spend a short amount of time reviewing that draft—there is nothing duplicative about this work. Here, a total of 6.2 hours was spent to draft the answer which, in and of itself, is reasonable. Moreover, the fact that more than half of that time was spent at the lower paralegal rate further suggests that the model employed by HHY resulted in a lower fee than having a single, more expensive timekeeper prepare the whole draft at a higher rate. In reviewing HHY's time records, I do not find any of Golaszewski's assertions of duplicative work to be well-founded. Rather, I find that the time spent to review and enhance work product initially prepared by another timekeeper was reasonable. Furthermore, most of the challenged time entries were quite short, (*e.g.*, Doc. 63-2 at 4 (challenging .6 hours spent to "review and approve discovery"), 5 (challenging 1 hour spent to "review and revise discovery responses" that Mosbrucker initially spent .9 hours preparing)), further supporting the reasonableness of HHY's billing practices.[11]

Similarly, I reject Golaszewski's argument that HHY's timekeepers engaged in excessive meetings. Having reviewed the billing entries as a whole, it was reasonable for

---

[11] I also reject Golaszewski's argument that it was unreasonable for HHY to have three lawyers attend the Hearing. Those lawyers came to the Hearing prepared. Golaszewski, on the other hand, was unprepared and could not even identify his own discovery responses, even with the support of Plaintiffs' local counsel, and was only able to identify them with help from those very HHY lawyers whose attendance he now challenges. (Doc. 59 at 18:19–21:7.)

the HHY team members defending Foutz Properties to confer with one another, including to strategize and coordinate the preparation of filings, discovery requests, and responses. There was nothing duplicative, redundant, or unreasonable about these meetings, especially given that the amount of time challenged is minimal. (*E.g.,* Doc. 63-2 at 6 (challenging 3.9 hours incurred from July 10, 2025, through August 12, 2025, in nine separate time entries, none of which exceeded .9 hours).)

Nonetheless, Foutz Properties has agreed to a reduction of its fees in the amount of $2,548.37—20% of the amount Golaszewski challenged as duplicative or excessive—to account for "any overly collaborative teamwork." (Doc. 65 at 3.) I will accept this concession and reduce the fee award by that amount.

**3. Clerical Work**

Golaszewski next challenges $1,027.00 as clerical or ministerial work. (Doc. 63 at 7.) Most of the challenged time is not clerical or ministerial. For example, Golaszewski challenges a $46 time entry on February 5, 2025, the day this case was reassigned to me. (Doc. 63-2 at 2.) There was nothing clerical or ministerial—let alone unreasonable—about an attorney billing .1 hours to review a court notice reassigning a case to a new judge. It goes without saying that lawyers should review case filings. Moreover, there is nothing unreasonable about a paralegal gathering exhibits, *(id.* at 2 (challenging .4 hours spent by Mosbrucker to "locate and assemble exhibits")), or about a lawyer researching cases flagged by opposing counsel, (*id.* at 6 (challenging .7 hours spent by Humphrey to "review dockets of selected filings in cases listed by opposing counsel as related")), and I therefore reject Golaszewski's challenges to such entries.

I do, however, agree that time spent reviewing or docketing deadlines is clerical or ministerial, and thus should be excluded. Here, paralegal Mosbrucker spent 1 total hour, totaling $210, on such tasks. Foutz Properties does not dispute that the fee award should be reduced by this amount. (Doc. 65 at 4.) Additionally, I find that .2 hours ($92) spent by Yavitz on June 30, 2025, to "review dates for discovery completion" was clerical, and thus not reasonable, especially given his role as a senior lawyer. (Doc. 63-2 at 5.)

Accordingly, I will reduce the fee award by $302 for clerical work.

**4. Entries Regarding the Quintanillas**

Golaszewski next challenges various entries concerning Foutz Properties' tenants and co-defendants, the Quintanillas. (Doc. 63 at 8–9.) He argues that $3,831.14 is not recoverable because HHY averred at the Hearing that it did not represent the Quintanillas. (*Id.*) Foutz Properties, on the other hand, argues that time HHY spent to help the Quintanillas was in Foutz Properties' interest. (Doc. 65 at 5.)

Most of the time Golaszewski challenges relates to the preparation of filings for the Quintanillas, including their answer. These fees were not directly related to HHY's representation of Foutz Properties, and thus were not caused by the multiplication of the proceedings as against Foutz Properties. Put another way, such fees do not satisfy the but-for test. *See Goodyear Tire*, 581 U.S. at 109. Accordingly, I will reduce the fee award by $3,185, reflecting time entries between March 11, 2025, and April 3, 2025 relating to preparation of materials for the Quintanillas. (Doc. 63-2 at 2–4.) Additionally, I will reduce the expenses by $45 for the fee incurred on March 20, 2025 to file the Quintanillas' answer.[12] (Doc. 60-1 at 15.)

A small portion of the challenged time relates to advice HHY gave Foutz Properties concerning the Quintanillas' participation in the case. (Doc. 63-2 at 2, 4 (challenging time spent to advise Foutz Properties about the Quintanillas' involvement in the litigation).) The time spent providing this advice was reasonably incurred, given that Plaintiffs' claims against Foutz Properties were based on the Quintanillas' conduct. Therefore, the 1.1 hours spent to prepare and provide this advice to Foutz Properties satisfies the but-for test.

**5. Fees on Fees**

Golaszewski also challenges Foutz Properties' request for $2,368 in fees incurred in connection with preparing the Fee Application, based on his evaluation of the quality of

[12] I share Golaszewski's confusion regarding HHY's preparation of work product for the Quintanillas while claiming that the firm did not represent those codefendants of Foutz Properties. The propriety of that conduct, however, is not before me, except as to the amount of fees Foutz Properties may recover.

the Fee Application and accompanying declaration. (Doc. 63 at 9.) Fees incurred in preparing a sanctions-related fee application are recoverable. *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017). And while the Fee Application was not detailed, the 4.4 hours collectively spent to prepare it, including its exhibits, was not excessive. I therefore reject Golaszewski's argument.

#### 6. Across the Board Reduction

Finally, Golaszewski requests an across-the-board reduction in the fees based on alleged systemic billing defects. (Doc. 63 at 9–10.) Because I do not agree that there were systematic billing defects, I decline to impose an across-the-board reduction.

## IV. CONCLUSION

Golaszewski vexatiously multiplied the proceedings in this case, and did so in bad faith. Foutz Properties is entitled to the majority of its attorneys' fees and expenses incurred as a result of Golaszewski's conduct.

Accordingly,

**IT IS ORDERED** granting in part and denying in part Defendant Reed Foutz Properties, LLC's Application for Fees and Expenses (Doc. 60), and awarding Foutz Properties fees in the amount of $47,981.63 and expenses in the amount of $722.60, for a total award of $48,704.23. Golaszewski shall pay this amount to Defendant Reed Foutz Properties, LLC no later than November 5, 2026.

**IT IS FURTHER ORDERED** that the December 15, 2025 Order (Doc. 57) is modified in part, as set forth in this Order, to remove (a) Rule 11 and my inherent authority as bases for sanctions, (b) remove The Casa Law Firm, P.C., as a sanctioned entity, and (c) remove the frivolousness of Plaintiffs' claims for contributory trademark infringement as a reason for imposing sanctions. Accordingly, the modified sanctions order is as follows: Foutz Properties' Motion for Sanctions (Doc. 47) is granted in part against Plaintiffs' counsel John Golaszewski. Pursuant to 28 U.S.C. § 1927, sanctions are warranted for the reasons stated in this Order.

///

**IT IS FURTHER ORDERED** denying Plaintiffs' requests for reconsideration and for discovery as set forth in their Response in Opposition to Defendant Reed Foutz Properties, LLC's Application for Fees and Expenses (Doc. 63).

Dated this 6th day of October, 2026.

Honorable Sharad H. Desai
United States District Judge